Can the attorneys on Sikora v. Parikh approach the podium please? Identify yourselves for the record. I'm Leslie Rosen on behalf of the appellate. And Robert Elworth on behalf of the appellate. Mr. Elworth, you have 20 minutes for the argument. Did you want to Mr. Elworth, you didn't try this case, did you? That's correct, I did not. I didn't even attend. So my understanding comes from the same paper that yours does. Again, my name is Robert Elworth. I'm with the law firm of Hepler Broome. I'm pleased to be here. May it please the Court, I'm representing Raleigh Parikh, the appellant here. I don't know that we're going to be meeting even at all 15 minutes. Because the way I think about this case is that we're just here to talk about five or six words that occurred in the closing argument of one of the defendants. Which leaves us with several things that are resolved, and that is that there is no dispute all of the evidence was correctly admitted at trial. The evidence supports the verdict. There's no argument about that. Was this an improper closing argument? No. It wasn't? Correct, it wasn't. It didn't violate any emotions and limits? I do not believe that it did. And I can jump straight to the word agreed if that's what you're asking me to do. The word agreed... I'd like to know how you've come to that conclusion. Well, number one... Wasn't it after he agreed? I'm sorry? Weren't the words after he agreed? The specific words are once he agreed. Once he agreed. Yes. And so... But I believe that if you take those words in context, the once he agreed is setting the stage for how long it would take for the ambulance to arrive, the patient, Mr. Sikora, to be placed into the ambulance and driven to the hospital for subsequent evaluation and treatment. That's what I believe the once... And even if you simply take the one word agreed out, it just becomes once he went to the hospital. But of necessity, the trial court Judge Lipscomb here made the determination that the word agreed of necessity includes a prior refusal. And I don't believe that as a matter of course is necessary. Certainly we can all agree... Wouldn't that be a natural inference? Wouldn't it be a natural inference if you're saying after he agreed? Wouldn't that be a natural thing that a juror would think? That obviously a man didn't agree and now he once agreed. You know, that takes a lot of things into assumption. And one of the things that I think is necessary to recognize is that, again, there's no complaints about anything about violation of motion in limine number nine during the trial. So the only thing we're focusing on here is the singular word to, if you want to say once agreed, but really the word agreed. What in the world would have given the jury so much an a-ha moment to say, oh my goodness, Mr. Skora must have refused previously. But wouldn't the trial judge be in a better position to be able to say they did have an a-ha moment? Wouldn't the trial judge in fact be the only one who could say that? No, I don't believe so. But I mean, he certainly has a better idea than any of the four of us because I wasn't even there. But the fact of the matter is... This wasn't just words. This was you put it on a screen.  You put it on a screen. Yes, the same... To emphasize it. I don't know that it was up there for emphasis as it was to simply set a framework for the discussion. But I don't believe that there was any emphasis on the word agreed because it was taken out. No one ever spoke of it again. And it certainly hadn't been an issue at any point in time up to that in the trial. There is no complaint about motion in limine except for this one specific word. And the notion that a two week trial is somehow thrown over and reversed by virtue of one word is a strong logical stretch. His decision to throw that over though would review that under abusive discretion, correct? Correct. Okay. So no one could find, no reasonable person could find that it warranted a new trial is the standard we're looking at, right? I think the standard is actually did the one word reverse the decision. Well, I'm talking about abusive discretion. So I'm just talking about we're looking at Judge Lipscomb's decision and we have to say that decision to give a new trial is something that no person in their right mind could ever come to that conclusion. I think that's a little stronger than what that says in the case. I wouldn't know what the right answer is. I'll tell you what's troublesome to me. It's not once he agreed to go. The statement was once he agreed to go and did go to the hospital. Correct. And you don't think that a reasonable juror would infer that he refused to go to the hospital and put the blame on him? Again, I don't see how a reasonable juror would suddenly say after listening to almost two weeks of testimony that had nothing to do with agreement, nothing to do with the refusal, is suddenly going to say and then change their entire mind about how the case would work. Well, if it had nothing to do with it, then why would you put it up there and do that? Why would somebody, what kind of lawyer would do that if it had nothing to do with the case? What's he trying to prove? I don't have a basis for that except for that this is my hunch. My hunch is that since this was a subject for a motion to eliminate, the slides were created in advance and it simply wasn't changed. Do you think it violated the motion to eliminate? I can argue that it doesn't, but it's probably a thin argument since the motion to eliminate says it was only no testimony about a refusal to go. I can make that argument. I don't know if that's the strongest argument, but I can make that argument. I don't think it did. Why didn't it? Why would that have violated the motion? Because of necessity, an agreement does not require a violable refusal. That's the reason why. The arguments of the motion and the order for the motion are only specific to refusal. Again, that's a fine line that I've drawn, but of necessity, it doesn't have to have violated the motion. Would it be unreasonable for a reasonable judge to think it violated the motion to eliminate? I'm not arguing with the reasonableness of that. I can argue that, but not of necessity. But if a reasonable judge could find that it violated the motion to eliminate, then the only question that we would have to answer if we agree with you on that is was the judge reasonable in assessing the impact? Now, the judge was there. For all we know, the jurors recoiled when they saw that or they seemed to focus on those words. They wrote them down. He probably wouldn't know what the jurors are writing down. We don't know what we don't know. What we do know is that he then told them to strike it from their notes if they did write it. In fact, he told them to do that twice. And we're ignoring that aspect of it here. And do you think that called more or less attention to it? Frankly, I think the objection called more attention to it than it was ever worth because it would have come and gone without anybody even paying attention to it. I'm not suggesting that the objection was of necessity incorrect. I'm simply saying by drawing attention to it, maybe it's possible. But I don't see how it could have necessarily brought more attention to it. The judge specifically then told them to strike it from their notes. It's not an issue. What about the second problem that Judge Lipscomb seemed to have a greater issue with, that stand-in-her-shoes argument? The stand-in-her-shoes argument, I think the judge made a couple of quite fundamental mistakes. Number one, he treated it as though it was a per se absolute plea for sympathy.  He called it what did he call it? He called it several things. He called it specifically prohibited by case law, clearly improper and prejudicial on its face. None of those are supported in the case law. For one thing, I searched like crazy when I was writing the briefs on this thing, and I searched again when I was preparing for today. You cannot find the word step in the shoes of or any using step and shoes in civil law, in Illinois law, as far as I know. And certainly there's none in the cases that are cited to you. They all speak of something different than that. Would you agree it's a plea for empathy? Absolutely not. Taken in context, there's no possible way to read it that way. All set-ups, even from the plaintiff's counsel in his closing argument, all set-up was focus on the relevant time frame here, 6 o'clock, 6 or 5 voicemail to sometime before 7 when the return call was made. Focus on the time frame. Step into her shoes at that time. What did she know at that time? Wasn't the argument that because times of the essence during her period of diagnosis or whatever the problem is, wasn't that we're looking at whether she deviated from the standard of care? So wasn't the step in her shoes, look at what she knew at that time, wasn't that what the purpose of that argument was? Absolutely. Step into her shoes. Yes. It wasn't like a step in her shoes how hard it is to be a doctor or how hard it is. Yeah, imagine the pressure that she was under making that decision. It had nothing to do with that. It was what did she know? What did she learn in the voicemail? What was followed up with on the telephone call before 7 o'clock? Not what do we know now? What did we, what occurred later in the day? What the experts have testified to? All these things that the jury has now learned about. Defense counsel was simply trying to pull the focus to this 55 or so minute period when Dr. Parikh had knowledge. What did that knowledge consist of? Was the decision that was based on that knowledge. Well, how about People v. Wood? Are you familiar with that case? Illinois Supreme Court case where it said it's generally improper for counsel during closing to ask a jury to place itself in the shoes of a victim or party, thereby inviting the jury to enter into some sort of empathetic identification with him or her. Also quoted in a previous Illinois Supreme Court case going back to 1988 called People v. Brightson. I'm certainly aware of that case. I think I included it in my brief to point out that the, this golden rule idea, which again, you can't find it in the case law. It's the points of their argument, but the fact that they're meeting the golden rule, it simply doesn't exist. But to the extent that this is not a preferred phrase. Well, it's more than that. It's a prohibited phrase. Even what you just read doesn't prohibit it. It says it is not, I don't remember exactly. I don't know. It says it's generally improper. That's the best way you can go, generally improper. Correct, which I don't think makes it prohibited. What do they mean by that, generally improper? Generally improper is. You still have to show prejudice. You still have to show prejudice. It is because you still have to show prejudice. And given the circumstances here, we weren't, there was no argument, feel sorry for Dr. Parikh. There was no argument of what's going to happen to her reputation. There's no argument of that type at all. It was simply setting the time frame and setting the knowledge that was available to her at the time. That's, I mean, and there's been already cases. I don't know how you could say that, because here you have the city in the shoe, and then we go into the other avenue where you put up the big sign before the jury in violating the motion of limiting. The two together are, to me, very serious and troublesome. Well, again, I find the statement, stand in the shoes, to be, have been treated completely incorrectly because it was drawn as a per se. This golden rule was the golden line in the saying. That's kind of the way I think about it. You step over on that retrial. That's not the law. When he says specifically prohibited, clearly improper, and prejudicial are in space, and then undertakes no prejudicial analysis whatsoever on the record and simply says it caused prejudice, the judge also says, I don't consider there to have been an intent to seek sympathy. That's in his statement. And he also says the follow-up argument where the statement step in the shoes of is taken out, the judge says that's an unobjectionable way to present the exact same argument. So, yes, I don't see the problem. I mean, I see the problem, otherwise we wouldn't be standing here. We're using the phrase of stand in the shoes. But that doesn't end the inquiry. There has to be an actual bias, sympathy-seeking analysis, and there simply wasn't one here. He just, it was a bright line rule. Once you say it, a new trial is an autopilot, as I wrote in my brief. There's no analysis further to be taken. And so once you recognize that step in the shoes is being overblown here, and it's just a phrase that is not specifically prohibited in the criminal law or in the, it's just, it's an inopportune thing to say because you'll end up in the appellate court. But you, once you get past that, we're down to one word. We're back to simply the word agree. And the concept that the word agree must indicate, and then it takes over and reverses the outcome of the trial. I understand your position, Justice Gordon, but I think that the focus on those five or six words, depending on where you start. Well, it's not just the words. It's the trial judge gets the opportunity to look at the jury. The trial judge has the ability to look at the jury for many years, and they see the faces, the expression, and how words affect them. And you want us, when we are dealing with a cold record, to be able to say that no judge would do what this judge did. I believe it was an abuse of, well, obviously we have one judge who decided to do it, but I believe it was an abuse of his expression. We didn't see what he saw. Excuse me, I'm sorry. I said we did not see what he saw in making that decision. Correct. And we also had no way of knowing it because he didn't bother to put it in the record as to what it was that he saw, which going off of that, you know, we're going on a cold record here, and what are we supposed to look at other than how in the world can five or six words, after what is, at least before this court, a completely clean trial that supports a defense verdict for underlying defendants. It's not as though Medicare is arguably to have been the beneficiary of these two misstatements by Dr. Preet's counsel. Medicare as well, on nursing allegations, was found not guilty. This is a case that too much focus is being placed on six words, five or six words. Furthermore, we're getting away from the fact that in each instance the judge sustained the objection and corrected it with the jury. And again, the judge in his statements during the post-trial argument said, it's axiomatic that this does not always necessarily fix the prejudice, which is an inversion of the generally accepted statement in law that it does fix the prejudice. Again, this is without any description as to why. We had a clean trial. We had a clean verdict. There is no reason to base a reversal on six words in the closing argument. It is an abuse of discretion to do so. There can't be a greater abuse of discretion than to misinterpret the law that applies to the statement, for instance, stand in the shoes. And once you get past that, are we really going to reverse a two-week trial on the basis of one word? Well, one word placed in two places on the slide, which was then taken down. If there's no further questions, I'll be more than happy to sit down. Thank you. Thank you, Mr. Osler. Ms. Rosen? Good morning. Thank you very much. Your Honor had it quite right. The standard of abuse of discretion is no reasonable person. No reasonable person. It's not to say that you would have made the same calling if you had been sitting there. Isn't it incumbent on the trial judge, when you are going on what would appear in the cold record to be miniscule missteps, wouldn't you agree that the trial judge has a duty to put something in the record establishing what he's seeing that has such a huge impact that he's going to grant you a new trial? No. Okay. It's plain and simple. The case is plain enough. Okay. They cite Jacobs and Clark for that proposition. But when you look at the words on those cases, they do not say that at all. They do not say that. And the question is, how would you prove that sort of thing if you're the judge? Do you say, do you put on the record, you know, I was looking at juror number seven when you said that? No. All he has to say is, as you were making that argument, I looked at the jurors. They all took notes on it. They all perked up. They all seemed surprised by it. It's pretty simple. There's not a case that says that's required. Not one. Well, that's the answer. Not what's he going to do. There's a bunch of stuff. It may not be required, but it certainly would have been a good idea. Well, it's not common. It is not common. And this is, I think, the standard of review. Well, I think it is common. I sat there for many years and did it all the time. I know you did. But in Jacobs, it doesn't say that. And they say it does. And it doesn't say it in Clark. And there's no case law that says that is required. The judge is sitting there. This is a very seasoned trial judge. And your job isn't to reweigh it. It's just to say, but no reasonable person has done this. We have a situation where they say, stand in the shoes. It's not just an I'm-not-preferred comment, as Justice Gordon said. It is a prohibited comment. We're not saying it's a black-letter law. Well, it's prohibited if it is in a context of she works so hard, she does so much good for people. Look at it from her point of view. That wasn't the statement in this, Ms. Rosen. The statement was, look at the information she had at the time she made that diagnosis. It was not a point for sympathy. That's the implication. What she said was, stand in the shoes. So you're saying just because he rings that magic bell of those magic words, it's automatically a new trial. No way. I did not say that. That's what they're trying to pin this as. No, I'm saying that automatically it is the wrong thing to say. And if you don't know that, you shouldn't be trying cases. However, beyond that, the judge has to decide, is this significantly contradictional? And the judge decided in this case that it was. And you cannot ignore the fact that right after she said that and right after that objection was sustained, she goes out and backdoors the same thing, backdoors it the second time by saying, the jury should evaluate the facts from Dr. Parikh's perspective. The job here is to evaluate the facts from the standard, based on the standard of care, what a reasonable doctor would have done under the circumstances. Not poor Dr. Parikh, who might have been asleep at this hour or whatever. I don't think it is debatable that it is sympathy. Well, it wasn't the point just to say, look at it from this doctor's viewpoint. Look at the information in front of the doctor. Imagine if you were Dr. Parikh and you had this information, how would you act? How is that a plea for sympathy? Because that's not the standard of review. That's not what the standard is for the jury. The standard is, what would a reasonable doctor have done under these circumstances? And isn't Dr. Parikh what I just said, though? I'm saying the same thing. I don't think it's acceptable. What should this doctor, if this doctor were acting reasonably, do under these circumstances? Imagine you're that doctor. What would you do under these circumstances? Not imagine you're that doctor. Why not? What's the difference? I don't think that's so. It is putting yourself in the doctor's shoes. Once you've put yourself in the doctor's shoes, it goes back to wood. You can't not have empathy. When you're standing in somebody's shoes, that's what empathy is. In criminal cases, prosecutors will give closing arguments from the viewpoint sometimes of the victim. They'll say, imagine you're the victim before you get attacked. That's wrong. Those are the things you can't do because you're definitely listing sympathy with regard to the victim in a criminal case. Or even in civil cases, you'll sometimes see it from the standpoint of a badly injured plaintiff and you try to get the jury to feel sorry for the plaintiff and to focus less on the liability question and just have sympathy for the plaintiff. Well, you can't do it overtly. That's a fact. You can't do them. Correct. You cannot do those. But is that really what's happening here? I mean, they're saying judge the doctor based on the information in front of the doctor at the time, in the circumstances. Put yourself in the doctor's shoes and imagine what they had to deal with. No, just because I said shoes, suddenly everything else I said is improper? No, it's not the word shoes. It's put yourself in the doctor's shoes. Think about it as if you were the doctor. What would the doctor have known? That is not what the jury should be considering. The jury should be considering what a reasonable doctor under these circumstances should be doing. Under these circumstances. Under the circumstances Dr. Parikh was encountering. These reasonable circumstances are based on expert testimony, are they not? Yes. Yes, of course. And the jurors are not experts. That's correct. It would be improper for them to put themselves in the shoes of the doctor because it would be the shoes of the expert, what the expert has testified. Based on the expert's testimony, what a reasonable doctor would do. Once you start imagining yourself in those shoes, if you were the doctor, you start fantasizing about whether that's you. It is sympathy. Ms. Rosen, is that statement alone, that stand in the shoes, was that a sufficient basis in and of itself to grant the J&OB? There was no J&OB. Neutrality. Neutrality, sorry. Thank you for correcting me. I'm sorry. I was going to tell you. Or was it both together? It was all together. And I think there's a third reason, too. But the judge basically felt it was this first statement followed by the second statement of evaluate the facts from her perspective. It's not from her perspective. That's just exacerbating the problem. It's by the perspective. So you're saying that that in and of itself wouldn't have been enough. No, I'm not saying that. Okay. Yes or no? No. I'm not saying it. I'm sorry. I'm confused. I'm saying that was the basic, the primary reason for the judge's ruling, okay, was this. Was the stand in your shoes argument. Was the stand in your shoes argument followed by the other, and then the agreed word. But, you know, to look, it's wrong. It's followed by, and maybe other things did, you know, he said no about the other argument. Would you agree that the entire, during the course of the trial, there was no violation of the motion unlimited? That's not an issue, yes. I'd have to agree to that. So throughout the course of the trial, the sole reason to get a new trial was the stand in your shoes and the agreed to go to the hospital. The closing argument, although I would say that the judge's failure, the judge's splicing out of the voicemail, the concern of the family being a blood clot, would also support it, although the judge did not. And because your job is to affirm the judgment, not the reasoning, therefore, I think you could also say that that was another problem in the case. But I do think, standing alone, that the closing argument problems were sufficient to say that this judge was a reasonable person. He looked at this jury. He looked at the case. It was a very closely balanced case. This was a tough case. And the case law, I don't think it's in the briefs, but it's commonly known that the closer the case, the more any error can be prejudicial. This was a classic battle of experts case. And that was what the judge decided. If I could just move on quickly. To say that this is about five words, six words, seven words, I think is silly. Plain and simple. One word alone can be inappropriate. George Carlin on TV years said there's ten words you can't say on TV. There are plenty of words, single words you cannot say to anybody and get away with it. A lawyer was disciplined by the ARGC a number of years ago for calling another lawyer. The word we come and say is the C word. You can't do certain things. This is prohibited. It's not that it's not preferred. It's not prohibited. It's prohibited. We're not seeking a bright line rule. The judge has discretion and nobody was shown that he abused his discretion. That's it. And the case law, the two cases they rely on most, I'll just go on. Cass v. Resurrection is easily distinguishable. In that case, the offensive remark was in response to a remark by the plaintiff's counsel, which wasn't the case in this case. And then they're citing Offit v. Penoyer. That case was an affirmance of the trial court's discretion. In your most recent case, I believe all three of you were on it, People v. Anaya, 2017, the court affirmed a trial court's order denying a new trial. And that was a case where you looked at it. It was also a different standard of review. It was plain error because the issue was forfeited. But your job is to not to reweigh the evidence, but just to say, would any reasonable person have done this? Not, if I was the judge, I wouldn't have done it. It's not de novo review. It's just abuse of discretion. And the trial court said it was a plea for sympathy. I think it is. And I think also the intent, as the trial court noted, is irrelevant. It is. It is by its very nature, telling somebody to stand in your shoes as an attempt is sympathy, which is expressly, you know, prohibited under the IPI. And lately I'm seeing more motions eliminate to keep out any sympathy, any apology. It's all irrelevant and prejudicial. Any other questions? Thank you, Justice Ginsburg. Thank you. Mr. Ellsberg? Hello. While it's not your job to reweigh the evidence here, nor is it the trial court's judge to impose what he thought may have been the correct outcome of the case, which I believe is the reason why he's focused on these sole terms. In addition, she did just concede that there was no violation of motion eliminate during the trial, and that's an evidentiary matter. There is broader leeway, of course, for counsel to make arguments in their closing arguments, which is not evidence. The evidence told, this is not evidence, but to be at the outset of closing arguments. So you think in a closing argument you could say whatever you want to say? Absolutely not. That's not what I'm saying at all. I think it's improper to seek sympathy, passion, or bias, if the purpose here is to simply set the stage for the factual matters that were in front of one of the parties. Chacos itself, the case of the case. But if you're setting it for factual matters, then why do you put yourself in the shoes of somebody else? What kind of argument is that? Is that a fair argument? I don't think it's an unfair argument. It may not be the best choice of words, but it does not mandate a new trial. In fact, this idea that when counsel pulled those words out, the judge himself said that became an unobjectionable argument. So the focus, of course, is simply on those words. And the Chacos case itself makes, which of course is relied on for this golden rule, even though it doesn't use the word golden rule, and it doesn't even use the word step in the shoes of. It says put yourself in the place of. But that sentence that says, whatever it says of Chacos, along the lines of, it's inappropriate to ask the jury to put themselves in the place of the party. Something along those lines. Two or three sentences later, it says the reason why, and that is because it's improper to ask the jurors to compare themselves to the party. Of course that didn't happen here. This is simply a fact-setting stage. I don't know what this is about the family concern over blood clots. I know that there was a motion in Luminae about that. It certainly isn't before this court. It's waived to the degree it was ever. It wasn't even raised in the post-trial motion. And close case. I don't know about this close case idea. We have a full defense verdict for underlined defendants. Now, obviously they have some issues to say. But we've got a nursing care allegation against Medicare, and we've got medical malpractice against a practicing doctor in another circumstance. I don't know how close this case was. Plaintiff's brief did not even include a separate statement of facts. So I don't know how close the case was because there's no issue about that raised, and certainly it wasn't raised any time previously. So unless there's any more questions. Thank you. Thank you. All right. Court is open to matter under advisement and action orders as soon as possible. Thank you.